

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00160-CR
_____

MUHAMET AJVAZI, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 1122010

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Muhamet Ajvazi was convicted by a Hopkins County jury of unlawful possession of a firearm by a felon. TEX. PENAL CODE ANN. § 46.04 (West 2011). For the purpose of enhancing the range of punishment, the State alleged two prior convictions,[1] each of which the jury found "true." The jury recommended a sentence of forty years' imprisonment. On appeal, Ajvazi challenges the admissibility of the enhancement convictions and complains of the admission at punishment of evidence of an extraneous offense.

## Admission of Evidence of Prior Offenses Was Not Error

Ajvazi's first point of error complains that "[t]he Court should reverse and remand due to the admission of evidence of prior convictions used as enhancements that were not authenticated and/or were not final." It is important to note that Ajavazi complains only to the admission into evidence of these prior convictions and neither to their use for enhancement purposes nor to any issue of sufficiency of the evidence.

The evidence of which Ajvazi complains centers on two Virginia felony offenses, the first being a 2006 conviction of the offense of felony eluding police and the second being a 2008 conviction of statutory burglary, evidence of both of which was introduced during the punishment phase of the trial. These are the same offenses the State had alleged for enhancement purposes. As proof of those convictions, the State proffered conviction and sentencing orders as evidence for each. However, neither of these orders contained fingerprints (as do those in Texas and as did some Virginia misdemeanor convictions which were likewise

_____

[1]TEX. PENAL CODE ANN. § 12.42 (West Supp. 2012).

2

proffered), an omission which Ajvazi claims is fatally defective as proof that he is one and the same person convicted of those crimes.

While the two felony conviction orders lacked Ajvazi's fingerprints, each of the documents did contain both a United States Social Security number and a date of birth of Muhamet Ajvazi (not a common name in East Texas) as the person being convicted. These same identifiers were also present in misdemeanor conviction orders (also from Virginia) introduced by the State, which did contain fingerprints. A witness for the State identified the fingerprints on those misdemeanor conviction orders as matching fingerprints given by Ajvazi prior to trial in the instant case. In addition, the State introduced Ajvazi's resident alien identification card, which showed a date of birth consistent with the dates of birth shown on the other conviction evidence, together with Ajvazi's Social Security card (which bore the same Social Security number as reflected on all of the documents).

Fingerprints and photographs are not the exclusive means of identifying a defendant as the same person convicted of the prior alleged offense. *See Littles v. State*, 726 S.W.2d 26, 30–32 (Tex. Crim. App. 1984) (op. on reh'g). No specific document or mode of proof is required to prove the existence of a defendant's prior conviction and then to link the defendant to that prior conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). In proving prior convictions, identity often includes the use of a combination of identifiers. *See Littles*, 726 S.W.2d at 30–32. In *Flowers*, the State used a certified copy of the defendant's driver's license record to prove a prior driving while intoxicated conviction for punishment enhancement. The record in that case contained, among other items, Flowers' date of birth, name, driver's license

3

number, and photograph from his driver's license. *Flowers*, 220 S.W.3d at 920. The State also produced a computer printout of Flowers' Dallas County conviction record, which included his Social Security number. *Id*. at 920–21. The Texas Court of Criminal Appeals found the totality of the State's evidence sufficient to prove the enhancement allegation beyond a reasonable doubt. *Flowers*, 220 S.W.3d at 925. "Each case is to be judged on its own individual merits." *Littles*, 726 S.W.2d at 32. The absence of copies of fingerprint evidence goes to the weight and credibility of the evidence, not to its admissibility. Here, the evidence was sufficient for a jury to conclude that Ajvazi was the individual convicted in the two alleged Virginia felonies.

Although his point of error regards the admissibility of the documents, Ajvazi also mentions the subsequent use to which the documents were placed. Ajvazi complains that one of the Virginia convictions used for enhancement (a felony conviction for eluding police) was the equivalent of a state jail felony[2] in Texas, and, thus, could not be used to enhance his punishment range. Ajvazi made a number of objections to the trial court regarding the admissibility of the evidence of the Virginia convictions, complaining that the prior convictions alleged by the State for enhancement (1) did not contain fingerprints, thus did not adequately link Ajvazi to the convictions, (2) did not indicate finality, and (3) at least one of them (i.e., the eluding police conviction) would be analogous to a state fail felony evading arrest in Texas. After this objection was lodged, a discussion ensued among the prosecutor, attorney for Ajvazi, attorney

---

[2]*See* Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, 2009 Tex. Gen. Laws 4385, 4386 (current version at TEX. PENAL CODE ANN. § 38.04 (West Supp. 2012)). The indictment for the eluding police conviction alleged Ajvazi "did unlawfully and feloniously, after having received a visible or audible signal from a law enforcement officer to stop, drive a motor vehicle in a willful or wanton disregard of such signal so as to interfere with or endanger the operation of the law enforcement vehicle or endanger a person." Such conduct constitutes a class 6 felony in Virginia. VA. CODE ANN. § 46.2-817(A) (LEXIS through 2012).

for Ajvazi's co-defendant, and the trial court; despite this discussion, there was never an explicit ruling by the trial court on any of Ajvazi's various objections.

The trial judge, apparently recognizing the stage of the trial where the issues were raised, said, "The important thing we need to do right now is see if they're admissible, and we'll argue the other issues as to whether they can be used to enhance at a later time."

Rather than centering on the admissibility of the documentary evidence, the ensuing discussion and argument concentrated on the State's use of the documentary evidence to prove that Ajvazi was the same person convicted of the Virginia felonies—despite the fact that those orders did not contain copies of the fingerprints of the person who had been convicted. When the State offered copies of the orders of conviction for the eluding police felony and statutory burglary felony, Ajvazi took the sponsoring witness on voir dire and questioned him about the lack of copies of fingerprints on those documents. Ajvazi's counsel objected that the orders lacked sufficient identifying information to establish that the person convicted of those crimes was Ajvazi. The trial court admitted the prior convictions and allowed the State to introduce them and connect them to Ajvazi, along with the other documentary evidence discussed above. Evidence of extraneous criminal activity is admissible after a finding of guilt. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3 (West Supp. 2012).

In summation, the trial court correctly ruled that the evidence of the Virginia convictions was admissible.[3] Ajvazi's first point of error is overruled.

---

[3]Ajvazi's objection to the introduction of the documents regarding the Virginia convictions questioned their finality. In the arguments before the trial court concerning their admissibility, Ajvazi brought into question whether the Virginia convictions were otherwise apt candidates to provide the basis for enhancement of the charges for which

## Extraneous Offense Testimony at Punishment Was Not Error[4]

Ajvazi also complains of admission of extraneous offense testimony from Ajvazi's thirteen-year-old sister, Maria,[5] at the punishment phase. Maria testified that she had been removed from her home and placed with foster parents; she further alleged that when she was six years old, she had been sexually assaulted by Ajvazi.

It is evident from the record that Maria was unwilling to testify and uncomfortable testifying against her brother. The reporter's record indicates she was upset and sobbing at times during her testimony, and it appears that she did not want to verbalize with specificity the alleged abuse. The State questioned Maria about the circumstances leading to her removal from the family home. Maria said that her removal to foster care, which occurred a year before the trial, was caused by something her brother had done. Although Maria said she described the incident in a letter (wherein she related that she had been in Ajvazi's room watching television when she was six), she seemed unable to bring herself to testify to the specifics of the incident. She did,

Ajvazi was being tried. "[A] probated sentence is not a final conviction for enhancement purposes unless it is revoked." *Colvin v. State*, 54 S.W.3d 82, 87 n.1 (Tex. App.—Texarkana 2001, no pet.) (citing *Jordan v. State*, 36 S.W.3d 871, 875 (Tex. Crim. App. 2001)). At the charge conference, Ajvazi again raised an objection to the inclusion of those Virginia convictions as the prior convictions supporting enhancement but that objection was overruled. If the Virginia convictions were not the proper bases for enhancement, there may have been some argument that the evidence was not legally sufficient and it may have been error to include them in a charge to the jury. However, on appeal, Ajvazi neither raises the issue of the legal sufficiency of the evidence to support the prior convictions nor does he raise the issue of charge error. These issues not having been raised, we do not consider them.

[4]The only case cited by Ajvazi for this argument is *Haley v. State*, 173 S.W.3d 510 (Tex. Crim. App. 2005), which we find inapposite. *Haley* disapproved of the trial court's allowing a mother to offer, at the sentencing phase of a drug possession case, victim impact testimony regarding the loss of her daughter in an extraneous murder. We do not consider the testimony of Ajvazi's sister, describing an alleged sexual assault upon her by Ajvazi, victim impact testimony, but rather as testimony of an extraneous offense offered under Article 37.07 of the Texas Code of Criminal Procedure.

[5]Ajvazi's sister will be referred to throughout the remainder of this opinion using the pseudonym Maria.

6

however, testify about an incident about two years before trial when she spoke with a friend who had also suffered a rape. When the friend told Maria she had been raped, Maria told the friend the same thing had happened to her. Although Maria acknowledged that she had revealed the identify of her rapist to her friend, she balked at testifying in court to the identity of the perpetrator. As the prosecutor persisted, Maria said she did not "want him in trouble"; asked again who had raped her, Maria answered, "Can't you guess?" Finally she said, "My brother." On cross-examination, Ajvazi got Maria to say that she had never "go[ne] to court against [her] brother in Virginia," suggesting that no criminal charges had been filed regarding the incident.

Ajvazi's point of error complains that the trial court erred by allowing extraneous offense evidence and testimony obtained after leading questions by the State. Ajvazi has presented a multifarious point of error, but we will, in the interest of justice, attempt to address his complaints as best we can determine them to be. Ajvazi first argues that there was no evidence linking him to the incident described, albeit obliquely, by Maria, "except as obtained by the State by leading the witness in violation of Texas Rule of Evidence 611(c)." It is true that during the several questions posed by the State, most references were to what happened when Maria was in her brother's room; and at the beginning of her testimony, she said she had one other brother besides Ajvazi. However, from the context of the questioning, including her identification of Ajvazi in the courtroom, and her statement about not wanting him to get in trouble (which the State followed by reminding Maria that he was already "in trouble for what happened here in Texas") the context of the record strongly suggests that Maria was discussing Ajvazi. The context is clarified by the following exchange:

7

> Q [Prosecutor]: What happened in your room when you were -- in Muhamet's room when you were six years old?
>
> A Can't you just say it?
>
> Q I'm sorry, I think the judge has ruled that you have to say it.

Thus, from the context of the witness' testimony and questions from the State, it is clear that Maria was referring to Ajvazi.

Ajvazi claims that Maria's testimony, which connects him to Maria's allegation, was only elicited from leading questions by the State. As described above, the thirteen-year-old Maria was clearly not comfortable discussing the incident. The State did ask some leading questions to which Ajvazi objected. Unsolicited, the trial judge also stated that he would "sustain the objection as to leading from this point forward." But after this, most of the questions by the State were either not leading or if they were leading questions, Ajvazi neither reurged his "leading" objection nor requested that any questions be rephrased. Most importantly though, when Maria finally answered the State's questions regarding the identity of her attacker, it was not in response to leading questions. We repeat the exchange in pertinent part:

> Q Okay. So, just tell us -- just tell us who you told your friend did that to you.
>
> A Can't you guess?
>
> . . . .
>
> Q No, I'm sorry. We can't guess. We have to know who did that to you.
>
> A (No response)

Q Can you tell us how he's related to you if not his name?

A My brother.

Q Did you just say, "My brother"?

A (Nods head up and down)

Q And did you just say yes to that question?

A Yes.

At that point, Ajvazi objected to leading and was overruled. The question, "Can you tell us how he's related to you if not his name," is not leading. The next question, "And did you just say yes to that question" was an attempt to clarify the witness' prior answer, a nonverbal gesture.

Leading questions are questions that suggest the desired answer. *See Tinlin v. State*, 983 S.W.2d 65, 70 (Tex. App.—Fort Worth 1998, pet. ref'd). Rule 611(c) of the Texas Rules of Evidence provides that leading questions may be used on the direct examination of a witness as necessary to develop his testimony. TEX. R. EVID. 611(c). Permitting leading questions on direct examination is a matter within the sound discretion of the trial court. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000). A defendant can show an abuse of discretion only by showing that such leading questions were unduly prejudicial. *See id.*; *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982). Even if some of the State's questions were leading; and even if Ajvazi adequately made objections to them, he has neither established an abuse of discretion on the part of the trial court nor demonstrated that any of the State's questions were unduly prejudicial.

9

Ajvazi also complains that the State admitted testimony about Maria's removal from her home to foster care, "with no one with personal knowledge of any proceedings testifying . . . which caused the jury to consider facts in punishment that should have [been] inadmissible at trial."[6] Maria herself testified about her removal to foster care and described how it had occurred as the result of a letter she had written apparently describing the sexual abuse by Ajvazi. Ajvazi does not explain how Maria would not constitute a person with personal knowledge of the proceedings; if anything, he suggests that she, as a minor, was not qualified to testify, but he presents no law or argument to support this claim. As a general rule, a witness is presumed to be competent to testify. TEX. R. EVID. 601; *Dufrene v. State*, 853 S.W.2d 86, 88 (Tex. App.— Houston [14th Dist.] 1993, pet. ref'd). A child is not competent to testify when, after an examination by the trial court, the child does not appear "to possess sufficient intellect to relate transactions" to which the child will testify. TEX. R. EVID. 601(a)(2); *Dufrene*, 853 S.W.2d at 88. Ajvazi did not challenge Maria's competency at trial, and from the record, we can find no indication she was not able to relate the occurrences to which she testified, notwithstanding her discomfort with the situation.

To the extent that Ajvazi claims Maria's testimony was not relevant to the charge of unlawful possession of a firearm by a felon, this testimony occurred at the punishment phase of the trial. The trial court has broad discretion in determining what evidence is relevant to

---

[6]Ajvazi lodged no objection to Maria testifying about her removal to foster care. He did not preserve this complaint for review. TEX. R. APP. P. 33.1(a)(1)(A). Notwithstanding the failure to preserve this claim, we find no merit to the argument.

10

punishment.  *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008).

> [E]vidence may be offered by the state . . . as to any matter the court deems relevant to sentencing, including . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).  We cannot say the trial court abused its discretion in admitting Maria's testimony.  We overrule Ajvazi's second point of error.

On review of the record, we observe the trial court's judgment states Ajvazi pled "true" to the two enhancement allegations when, in fact, Ajvazi pled "Not true."  This Court has authority to modify judgments and correct errors to make the record speak the truth.  TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.).  "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte and may have a duty to do so."  *Id.* (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd)).  We modify the trial court's judgment to reflect pleas of "not true" to the enhancement allegations.

As modified, we affirm the trial court's judgment and sentence.


Bailey C. Moseley
Justice

Date Submitted:     October 23, 2012
Date Decided:       October 26, 2012

Do Not Publish

12