299 S.W.3d 349 (2009)
April Suzanne RHOTEN, Appellant,
v.
The STATE of Texas, Appellee.
No. 06-09-00025-CR.
Court of Appeals of Texas, Texarkana.
Submitted: September 18, 2009.
Decided: October 16, 2009.
*350 Austin R. Jackson, Tyler, for appellant.
Michael J. West, Asst. Dist. Atty., Tyler, for appellee.
Before MORRISS, C.J., CARTER and MOSELEY, JJ.

OPINION
Opinion by Justice CARTER.

I. Factual and Procedural History
After trial by jury, April Suzanne Rhoten was convicted of conspiracy to commit murder and sentenced to eighteen years' imprisonment. Rhoten's sister, Amber Rhoten, discovered text messages on Rhoten's cell phone indicating Rhoten's intention to kill their father. Amber alerted the police, who investigated the matter and interviewed Rhoten on two separate occasions. During police questioning, Rhoten confessed to agreeing with James Perkins to kill her father and to planning the murder through telephone calls and text messages with Perkins. Before and throughout the guilt/innocence phase of the trial, Rhoten sought to offer expert and lay testimony of her mental retardation to contest that she had the requisite mens rea to commit conspiracy to commit murder. The trial court excluded the evidence under Texas Rule of Evidence 403.
On appeal,[1] Rhoten argues that: 1) the evidence supporting the judgment was legally and factually insufficient; 2) the trial court erred by excluding evidence of her mental retardation during the guilt/innocence phase of the trial; and 3) the judgment erroneously indicates Rhoten pled guilty.
We reform the judgment and affirm because: 1) the evidence was legally and factually sufficient to prove the existence of a criminal conspiracy to commit murder; 2) Rhoten failed to preserve error regarding the exclusion of mental impairment evidence; and 3) Rhoten pled "not guilty."

II. Legal and Factual Sufficiency
The indictment against Rhoten alleges that
with the intent that murder ... be committed, agreed with James Perkins that *351 one of them would engage in conduct that would constitute said offense, and said defendant and April Rhoten performed an overt act in pursuance of said agreement, to wit: by sending of text messages agreeing to commit the murder.
In her first point of error, Rhoten argues the evidence supporting her conviction was legally and factually insufficient to prove: 1) the existence of an agreement to commit a felony, and 2) she or Perkins committed an overt act in pursuance of the agreement.[2] We disagree.

A. Standard of Review
In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Laster v. State, 275 S.W.3d 512, 517-18 (Tex.Crim.App.2009); Roberts v. State, 273 S.W.3d 322 (Tex. Crim.App.2008); Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).
In a factual sufficiency review, we review all the evidence, but do so in a neutral light instead of the light most favorable to the verdict. We determine whether the evidence supporting the verdict is either too weak to support the fact-finder's verdict, or, considering conflicting evidence, is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong and manifestly unjust. Laster, 275 S.W.3d at 518-19; Lancon v. State, 253 S.W.3d 699, 705 (Tex.Crim.App.2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App.2007); Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App.2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App.2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.App.1996).
In this analysis, we use a hypothetically correct jury charge to evaluate both the legal and factual sufficiency of the evidence. Grotti v. State, 273 S.W.3d 273 (Tex.Crim.App.2008). Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. Villarreal v. State, 286 S.W.3d 321 (Tex.Crim.App.2009); Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).
A person commits the offense of criminal conspiracy if, with the intent that a felony be committed, he or she agrees with one or more persons that they or one or more of them engage in conduct constituting the felony and he or she or one or more of them performs an overt act in pursuance of the agreement.
TEX. PENAL CODE ANN. § 15.02(a) (Vernon 2003). Since direct evidence of intent is rarely available, the existence of a conspiracy can be proven through circumstantial evidence. Miles v. State, 259 S.W.3d 240 (Tex.App.-Texarkana 2008, pet. ref'd); see Underwood v. State, 967 S.W.2d 925, 931 (Tex.App.-Beaumont 1998, pet. ref'd); see also Farrington v. State, 489 S.W.2d 607 (Tex.Crim.App.1972).

B. Existence of a Conspiracy Analysis
*352 Rhoten and Perkins worked together at Goodwill Industries. Heather Goggans, a manager at Goodwill Industries, contacted Amber to report that she would be suspending Rhoten and Perkins for embracing on the job. To punish her for this conduct, Amber took Rhoten's cell phone. When inspecting that phone, Amber saw a text message to Perkins asking, "When do you plan on killing my dad?" Investigator Matthew Smyser photographed text messages sent between Rhoten's cell phone and Perkins' cell phone, stating "get money," "priority high," and "plan way to kill my father." When Detective Dennis Matthews interviewed Rhoten, she stated that she wanted to kill her father, that Perkins agreed to help her commit the murder, and that they planned the murder via telephone calls and text messages.
As to Perkins' involvement in this plot, a note from Rhoten to Perkins was found in Perkins' room entitled "Tips on how to act like nothing happened" and another note listing:
DNA; relationship; proximity; type of crime; timing; early morning hours or daytime; tools; alibi; get away; thick gloves; wait at least one month to buy supplies for murder; to hotel with no cameras; don't watch the news and avoid newspapers; to funeral; act sad have remorse; rent a car; act like you're crying; get rid of the body; act like nothing happened; don't talk to nobody; avoid the cops; don't talk to family; be happy; go back to the scene of the crime, get your stuff and leave; go to hotel.
Perkins' grandfather searched Perkins' bedroom and found other notes from Megan, who was identified as Rhoten, discussing tips on "how to kill my dad" and "Baby I can't believe we are going to do it." Rhoten had explained to the investigating officers that Perkins was "okay" with the plan to kill her father and told her he would assist her. According to Rhoten's statement, they were going to "get a knife, [and] go in his bedroom while he was sleeping" to kill her father.
Rhoten shared an apartment with her father. In Rhoten's bedroom, one of her father's knives (a switchblade) was found hidden in her jewelry box. Rhoten also photographed her father while he slept, and sent the photograph, via telephone, to Perkins, so Perkins could identify him at the time of the murder.
In Butler v. State, the court of appeals upheld a conviction for conspiracy to commit murder and noted that the overt actions in furtherance of the agreement consisted of: 1) the defendant soliciting the aid of others in committing the murder; 2) the defendant providing his co-conspirators with weapons to be used in the murder; 3) the defendant familiarizing the co-conspirators with the potential victim's house and premises; 4) the co-conspirators discussing different methods of committing the murder, as well as different methods of altering the appearance of a vehicle so that it could not be identified; and 5) the defendant paying his co-conspirators an advance payment for the murder. 758 S.W.2d 856, 860 (Tex.App.-Houston [14th Dist.] 1988, no pet.).
A hypothetically correct jury charge required the State to prove that Rhoten agreed with Perkins to engage in conduct that would constitute the offense of murder and that one or more of them performed an overt act in pursuance of the agreement. Even though the indictment alleged the overt act was the sending of text messages agreeing to the murder, the State proved, without objection, other overt acts which would satisfy the proof requirement. A rational jury could have concluded beyond a reasonable doubt from *353 the above evidence that Rhoten, with the intent that murder be committed, agreed with Perkins that one of them would commit murder, that Rhoten committed overt acts in pursuance of such agreement by obtaining and secreting the switchblade knife for use in the murder, and that Rhoten photographed her father and sent the photograph to Perkins so Perkins could identify Rhoten's father when the murder was carried out. Further, there is evidence that they discussed and planned different methods of escaping suspicion and punishment for the crime. The evidence was legally sufficient to support the jury's verdict.
In conducting a factual sufficiency review, we must consider the evidence that, according to the appellant, most undermines confidence in the jury's verdict. Curiel v. State, 243 S.W.3d 10, 16 (Tex. App.-Houston [1st Dist.] 2007, pet. ref'd); see Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.2003). Rhoten wrote several notes about how to behave after the murder and how to avoid suspicion, including one note addressed to Perkins that said "on the computer I found tips on how to kill my dad [and] 2 things that it said avoid the news and avoid the newspapers and the press ... I can't believe we are actually going to do it."[3] Rhoten points out that Smyser was unaware of whether Perkins had ever received or read these notes. Rhoten also directs us to evidence that Perkins knew of Rhoten's plot to kill her father, and that while there is evidence that Rhoten asked Perkins to kill her father, there is no evidence that Perkins responded in any way.
"The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." Wesbrook v. State, 29 S.W.3d 103, 111 (Tex.Crim. App.2000). In resolving conflicts in the evidence, a jury "may accept one version of facts and reject another or reject any of a witness' testimony." Baker v. State, 986 S.W.2d 271, 276 (Tex.App.-Texarkana 1998, pet. ref'd). Here, the evidence in this case is not so weak or so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. The evidence of criminal conspiracy is legally and factually sufficient, and we overrule Rhoten's first point of error.

III. Preservation of ErrorExclusion of Mental Impairment Evidence
In her second point of error, Rhoten argues that the trial court abused its discretion by preventing her from presenting evidence of her mental retardation during the guilt/innocence phase of the trial. We find Rhoten failed to preserve error regarding exclusion of the mental retardation evidence.
In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an "offer of proof" which sets forth the substance of the proffered evidence. TEX.R. EVID. 103(a)(2). Rule 103(a)(2) provides, "Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." The offer of proof may consist of a concise statement by *354 counsel, or it may be in question-and-answer form. Warner v. State, 969 S.W.2d 1, 2 (Tex.Crim.App.1998). If in the form of a statement, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." Id.
"The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence." Mays v. State, 285 S.W.3d 884 (Tex.Crim. App.2009) (quoting Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, 1 Texas Practice-Guide to the Texas Rules of Evidence: Civil and Criminal § 103.3 (1993)).
The Texas Court of Criminal Appeals' decision in Mays is instructive because it was predicated on a similar set of circumstances. During voir dire, the defendant sought to show detailed slides about mental impairment to the jury panel and ask questions in regard thereto. Id. at 886. The defendant also stated his intention to offer evidence of mental impairment during the guilt/innocence phase, to show the defendant lacked the capacity to form the necessary mens rea. Id. at 886. The defendant proffered to the court the slides, and the questions he anticipated asking the jury panel, for consideration of admissibility.[4]Id. at 886-87. Relying on Jackson v. State, 160 S.W.3d 568 (Tex.Crim. App.2005), the trial court acknowledged that Texas does not recognize an affirmative defense of diminished capacity, and made a broad ruling, excluding from voir dire and the guilt/innocence phase all evidence of mental impairment, no matter the content of the evidence.[5]See Mays, 285 S.W.3d at 886-87.
During the guilt/innocence phase, the defendant explicitly relied on the court's blanket exclusion of all mental impairment and diminished capacity evidence, and did not call his anticipated expert or other witnesses to testify regarding his mental impairment or otherwise enter the substance of their testimony into the record.[6]Id. at 887-88, 890-91. The defendant explained on the record that:
The evidence in this case, were we allowed to present it, would show that because of mental and medical impairment, the defendant lacked, at the time of the alleged commissions of this crime, the ability to form the requisites of the mental state required....
Id. at 886.
The Texas Court of Criminal Appeals noted that "this sort of summary, in the most general and cursory terms, without any of the meat of the actual evidence will not suffice to preserve error." Id. at 891. In order to preserve the issue for appeal, the defendant
was required to proffer, with some degree of specificity, the substantive evidence he intended to present, during the guilt phase, of the appellant's mental *355 impairments and their impact on his mental state at the time of the offense.
Id. at 890. The court held that the defendant failed to preserve error and noted that it is the proponent's burden to ensure that the substance of the mental impairment evidence was placed into the record and that the trial court's blanket ruling excluding the evidence did not relieve the defendant of that burden. Id.
In this case, in order to rebut or negate mens rea,[7] Rhoten sought to offer expert and lay witness testimony that she suffered from a mental impairment (mental retardation), and therefore "lacked the ability to specifically intend to enter into a conspiracy to commit a felony."[8] Outside the presence or hearing of the jury, the trial court stated that it wanted to hear the proffered mental impairment testimony from the expert and other witnesses before ruling on its admissibility. However, no such testimony or proffer of evidence is reflected in the record. After hearing the arguments of counsel regarding the admissibility of the mental impairment evidence, the trial court held that: The Court's ruling at this time is the evidence of diminished capacity or what [Appellant's attorney] has described as mental retardation, the Court not having heard the testimony of the expert, evidence of any type diminished capacity or evidence of any type of mental retardation in the guilt phase of the trial at this time, the Court is going to rule that under the [Rule 403] balancing test, the Court is going to find that the probative value of the evidence of mental retardation or diminished capacity is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury.
Therefore, my ruling at this time is that evidence of diminished capacity or mental retardation is not admissible in the guilt phase of this trial under the Jackson [v. State, 160 S.W.3d 568 (Tex.Crim. App.2005)] case.
(Emphasis added.) During the trial, witnesses were questioned in a manner that strayed onto the issue of mental retardation; the trial court repeatedly noted that it had conducted the Rule 403 balancing test and that the evidence of mental impairment was inadmissible thereunder.
At the conclusion of the evidence, Rhoten stated that
[his expert] was going to talk that he did tests or evaluated my client, that she is mentally retarded. And I was going to get into the evidence of her mental retardation.... Also I was going to call Dennis Rhoten ... who's [Rhoten's] father, that she was in special classes, that she was mentally retarded, and things of that nature.... Also I was going to call Angela Holcomb ... [s]he is going to testify also that [Rhoten] is mentally retarded and things of that nature....[9],[10]
*356 Like the defendant in Mays, rather than call her witnesses and have their excluded testimony entered into the record, Rhoten relied on the trial court's broad ruling excluding all mental impairment or other diminished capacity evidence. Rhoten's summary statement of the excluded evidence was in the same general and cursory terms held to be insufficient by Mays. 285 S.W.3d at 891. There is no evidence in the record of Rhoten's specific mental impairments or their impact on her mental state at the time of the offense, thereby failing to meet the requirements of Texas Rule of Evidence 103. Therefore, Rhoten failed to preserve the issue for our review, and Rhoten's second point of error is overruled.

IV. Rhoten Pled "Not Guilty"
In her third point of error, Rhoten contends the judgment should be reformed to reflect her plea of "not guilty." We agree.
We have the authority to reform the judgment to make the record speak the truth when the matter has been called to our attention by any source. French v. State, 830 S.W.2d 607, 609 (Tex. Crim.App.1992). Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte and may have a duty to do so. Asberry v. State, 813 S.W.2d 526, 531 (Tex. App.-Dallas 1991, pet. ref'd); see French, 830 S.W.2d at 609. The Texas Rules of Appellate Procedure also provide direct authority for this Court to modify the trial court's judgment. TEX.R.APP. P. 43.2.
Here, the judgment incorrectly indicates that Rhoten pled "guilty" to the alleged offense. However, the record makes clear that Rhoten pled "not guilty" and elected to have her case submitted to a jury. Accordingly, we reform the judgment to reflect Rhoten's plea of "not guilty" to the offense charged. As reformed, we affirm the judgment of the trial court.
NOTES
[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. See TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. See TEX. R.APP. P. 41.3.
[2] Rhoten contends the indictment is defective, in that it is "on its face, legally insufficient [because] the overt act must be something more than simply making an agreement." We note that Rhoten failed to file a motion to quash or otherwise object to the indictment at trial, and therefore, failed to preserve error with regard to any defects in the indictment. See TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005).
[3] These notes and letters are from a "Megan." Matthews testified, without objection, that "Megan" is, in fact, Rhoten.
[4] The defendant offered the slides as exhibits, and the court admitted them for the record.
[5] The trial court "also excluded the evidence because of prejudice, irrelevance, and confusion to the jury." Mays, 285 S.W.3d at 887. We note the defendant's question of "how could we know if that evidence would be more prejudicial than probative when we haven't even had a chance to see what that evidence is." Id. at 891.
[6] The trial court agreed with the defendant that calling his expert and other witnesses to testify regarding mental impairment was unnecessary because of its broad ruling excluding all such evidence. See Mays, 285 S.W.3d at 891.
[7] Rhoten was held to be competent for trial.
[8] The incapacity to form a requisite criminal intent due to mental disease or defect is "insanity." Thomas v. State, 886 S.W.2d 388 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). Insanity is the only "diminished capacity" defense to criminal responsibility in Texas. Jackson, 160 S.W.3d at 573. "Texas does not recognize diminished capacity as an affirmative defense, i.e., a lesser form of the defense of insanity." Id. at 573.

Here, at trial, without objection from Rhoten, the State and the trial court referred to the purpose of the evidence as "diminished capacity." Rhoten did not explicitly state the purpose of the evidence at trial; however, it is apparent from the record that she sought to introduce the evidence to rebut or negate mens rea.
[9] In a bill of exception, Matthews testified that Rhoten's father told him she was mildly retarded and that he and the other officers investigating this case were informed that Rhoten was mentally retarded.
[10] Rhoten's proffered expert conducted Rhoten's competency evaluation and concluded that Rhoten was mildly retarded but competent to stand trial and was fully aware that her conduct was wrong.