

# NUMBER 13-12-00132-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RICKY PERALES,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                           Appellee.

On appeal from the 94th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellant Ricky Perales appeals his conviction for robbery, a second-degree felony, enhanced to a first-degree felony under the habitual felony statute. *See* TEX. PENAL CODE ANN. §§ 12.42(b); 29.02 (West Supp. 2011). By two issues, Perales asserts that (1) the evidence is insufficient to sustain his robbery conviction; and (2) the punishment assessed by the jury violated the Eighth and Fourteenth Amendments to the

United States Constitution.   We affirm as modified.

## I.   BACKGROUND

The State indicted Perales for robbery, a second-degree felony.   *See* TEX. PENAL CODE ANN. § 29.02*.*   Perales pleaded "true" to a prior felony conviction which enhanced the charge to a first-degree felony.   *See id.* § 12.42(b).   The following evidence was presented at Perales's jury trial.

Curtis Manning called police shortly after 2 a.m. on September 23, 2011 to report that he had been attacked inside of his Leopard Street apartment in Corpus Christi, Texas.   Manning told authorities that the suspects took $70 in cash from his pocket during the attack and subsequently fled in a white Ford Expedition.

While en route in response to the call, Corpus Christi Police Officer Adrian Diaz spotted a white sports utility vehicle that matched Manning's description "traveling at a high rate of speed," and decided to conduct a felony stop.[1]   Officer Diaz identified Perales, Raymond Broussard, Charles Harris, and Cecilia Jensen as the occupants of the vehicle.   According to Officer Diaz, the four individuals were cooperative and were read their *Miranda* rights prior to questioning from officers.   Officer Diaz asserted that during his questioning of Broussard and Jensen, each blamed Perales for hitting Manning with an unopened can of soda.

Police officers transported Manning to the scene of the felony stop, where he positively identified all four individuals as his attackers.   Officer Diaz described Manning at that time as sober and scared, with injuries to his jaw, his head, and scrapes all over

---

[1] Officer Diaz testified that a felony stop is a "high-risk stop" in which officers exit their vehicles with weapons drawn and ask all the occupants to step out of the vehicle one at a time.

his body. According to police, the suspects displayed no injuries and a $50 and $20 bill was recovered from Broussard's possession.

At trial, Manning testified that he met Jensen on September 22, 2011 in a parking lot, and the couple exchanged phone numbers. Later that night, Jensen called Manning's cell phone and eventually showed up to his apartment within twenty or thirty minutes in a white Ford Expedition. According to Manning, Perales and Broussard accompanied Jensen as they approached his apartment and entered without invitation.

Manning asserted that he asked the group to leave his apartment, but they refused. Manning testified that Jensen opened his refrigerator and handed out cans of sodas to Broussard and Perales. Manning stated that he again asked the group to leave, but in the process of doing so, he took a hit to the head from Perales. Manning did not know whether the blow came from Perales's fist or an unopened soda can. Manning testified that at that point, the group began "punching away" at his body for about three or four minutes as he yelled for help. As he attempted to get up from being knocked to the floor, he felt someone reach into his left pocket and pull out its contents, including the $70 in cash. Manning stated that at that point, the punching stopped and the group left his apartment. Manning testified that as Perales walked out, he told him that he "better not find out [Manning] had more money" in his apartment. The State questioned Manning about a discrepancy in his 9-1-1 call, in which he described his attackers as "three black males," since Perales is not black and Jensen is a woman. Manning explained by stating that he "just had the hell beaten out of [him]" and probably did not have "all of [his] marbles at that particular time."

3

Perales testified in his defense that he accompanied Jensen, Broussard, and Harris to Manning's apartment on the night in question, but he did not enter the apartment as Manning claimed. Instead, Perales stated that he stayed outside the apartment while Broussard and Jensen entered. Perales recalled seeing Manning pull out a $50 bill and then the trio began to argue. According to Perales, Manning started "getting aggressive" and pushed Jensen, and then Jensen and Broussard tried to restrain Manning. Perales stated that at that point, Manning gave Jensen a $50 and $20 bill. In sum, Perales denied hitting, touching, or kicking Manning. He also denied picking up a soda can.

The State called Jensen as a rebuttal witness. Jensen admitted to seeing "people" fighting with Manning on September 23, 2011, but could not recall exactly who because she was high on "a couple hundred" dollars worth of crack cocaine that night. Jensen testified that Perales, Broussard, and Harris accompanied her to Manning's apartment that night, but Manning did not punch her, although he did get in her face. Initially, Jensen testified that she pleaded guilty to the robbery charge because she "was guilty." A handwritten letter addressed to the trial court and signed by Jensen from prison was also admitted into evidence, in which she acknowledged the wrongfulness of her role in the robbery, and asked the trial court to help her "get . . . on the right track." Later in her testimony, however, Jensen claimed that she was forced to plead guilty and made a claim of ineffective assistance of counsel.

The jury subsequently found Perales guilty as charged, assessed his punishment at sixteen years' imprisonment with the Texas Department of Criminal Justice's Institutional Division, and imposed a fine of $10,000. This appeal ensued.

## II. SUFFICIENCY CHALLENGE

By his first issue, Perales contends that insufficient evidence supports his robbery conviction.

### A. Standard of Review

When reviewing a defendant's sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (citing *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (plurality op.)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury. *Montgomery*, 369 S.W.3d at 192. Thus, our duty is "simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged." *Id.* (internal citations omitted). When faced with a record supporting contradicting inferences, we must presume that the jury resolved such conflicts in favor of the verdict, even if not explicitly stated in the record. *Id.* (citing *Brooks*, 323 S.W.3d at 899 n.13).

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of

liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

### B. Discussion

Here, the State alleged that Perales committed a robbery. Under a hypothetically correct jury charge, Perales is guilty of robbery if (1) in the course of committing theft,[2] and (2) with intent to obtain or maintain control of the property, he (a) intentionally, knowingly, or recklessly caused bodily injury to Manning; or (b) intentionally or knowingly threatened or placed Manning in fear of imminent bodily injury or death.

Manning testified that Perales, along with the other defendants, entered his apartment on September 23, 2011, uninvited, and struck him with a blow to the head with either his fist or an unopened can of soda. Manning testified that Perales, along with the others, proceeded to punch and kick him for about four or five minutes before he felt someone reach into his left pocket and pull out its contents, including $70 in cash. Manning also testified that prior to leaving his apartment, Perales told him that he "better not find out [Manning] had more money" in his apartment. Manning also identified the white Ford Expedition that the group fled in after his attack.

Officer Diaz testified that Perales was located alongside Broussard, Jensen, and Harris in a vehicle that matched Manning's description to police dispatchers shortly after the incident. According to Officer Diaz, Broussard and Jensen both told him that Perales attacked Manning with a soda can. Officer Diaz also described Manning's injuries as "pretty bad" with injuries to his jaw, head, and body. Jensen also admitted to

---

[2] A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2011).

6

pleading guilty to the robbery and that Perales accompanied her to Manning's apartment that night.

We acknowledge that Perales's testimony—and to some extent, Manning's and Jensen's testimonies—present contradicting pieces of evidence about what happened on September 23, 2011. Nevertheless, we presume that the jury resolved those conflicts in favor of the verdict. *Montgomery*, 369 S.W.3d at 192.[3]

Therefore, after viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found Perales guilty of robbery beyond a reasonable doubt. Perales's first issue is overruled.

### III. PUNISHMENT

By his second issue, Perales asserts that the punishment assessed by the jury violated the Eighth and Fourteenth Amendments to the United States Constitution.

**A. Discussion**

As a prerequisite to presenting an issue on appeal, the record must show that a complaint was made to the trial court by a request, objection, or motion, which stated the specific grounds for the complaint, and the trial court ruled on the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a). A defendant's failure to object in the trial court or through a post-trial motion about sentencing waives the issue on appeal. *See Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Luera v. State*, No. 13-10-00657-CR, 2011 WL 3631951, at *2 (Tex. App.—Corpus Christi Aug. 18, 2011, no pet.) (mem. op., not designated for publication). Moreover, even constitutional claims may be waived for failure to object. *See Smith v. State*, 721

---

[3] The jury appeared to give varying levels of weight and credibility to the witnesses' testimonies in light of it finding Perales's co-defendant, Charles Harris, not guilty.

S.W.2d 844, 855 (Tex. Crim. App. 1986); *Treviño v. State*, 174 S.W.3d 925, 927 (Tex. App.—Corpus Christi 2005, pet. ref'd).

Here, Perales failed to object to the trial court following his sentencing. Perales also did not file a post-trial motion complaining about the sentence imposed. As a result, the issue is waived and overruled. *See Noland*, 264 S.W.3d at 151.

## IV. MODIFICATION OF JUDGMENT

The trial court's judgment incorrectly reflects that Perales waived a jury trial and pleaded guilty to the robbery charge. The record shows, however, that Perales pleaded not guilty and issues of his guilt and punishment were tried before a jury. The Texas Rules of Appellate Procedure allow this Court to modify judgments *sua sponte* to correct typographical errors and make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State,* 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State,* 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.); *Gray v. State,* 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, pet. ref'd). Thus, we modify the judgment to correctly reflect Perales's plea of "not guilty" and that this cause number was tried before a jury.

## V. CONCLUSION

We affirm the trial court's judgment as modified.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
23rd day of May, 2013.