

# NUMBER 13-12-00467-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SUMMER CHRISTINE SHORE,                                           Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

## On appeal from the 329th District Court
## of Wharton County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Summer Christine Shore challenges her conviction by a jury for driving

while intoxicated (DWI). *See* TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2011). By

one issue, Shore argues that the trial court erred in denying her motion to suppress her

blood test results because the magistrate who signed the warrant to draw her blood was not a licensed attorney. We affirm as modified.

## I. Background

Shore was indicted for driving while intoxicated in connection with a car accident on the evening of May 18, 2011 in Wharton, Texas. *See id.* The indictment included two enhancement paragraphs detailing three prior DWI convictions. Before trial, Shore filed a motion to suppress the blood draw evidence obtained by the arresting officer, which the trial court denied. Shore pleaded not guilty to the offense, and her case was tried to a jury. Before trial began, Shore again objected to the blood test evidence.

At trial, the State first presented the testimony of the arresting officer, Wharton County Sheriff's Deputy Robert Mancillas, who was employed by the City of Wharton Police Department at the time of Shore's arrest. Officer Mancillas testified that around 11:00 p.m. on May 18, 2011, he was dispatched to investigate a report of a vehicle in a ditch. When he arrived on the scene, Officer Mancillas encountered a Ford Mustang in a drainage culvert, a tow-truck driver, and the driver of the car, Shore. Officer Mancillas testified that it was obvious the vehicle had been in an accident. Officer Mancillas testified that when he made contact with Shore, he "could tell she could not stand vertically without swaying at times." He testified that she smelled of alcohol and had bloodshot eyes. Her speech was slurred, and she "had an unsteady balance." Officer Mancillas asked Shore if she needed medical attention, and she told him she did not. Shore admitted to Officer Mancillas that she had been drinking, specifically, that she had three beers that evening. Shore told Officer Mancillas "that her apartment was just down

2

the road and pretty much plead[ed] not to take her to jail and to help her."

When his supervising sergeant arrived on the scene, Officer Mancillas performed standard field sobriety tests on Shore, including the finger dexterity test, the one-legged stand test, the walk-and-turn test, and the horizontal gaze nystagmus test. He testified that Shore showed signs of intoxication in every test, and at this point, based on his observations, Officer Mancillas testified that he believed Shore was intoxicated. Officer Mancillas then arrested Shore. After her arrest, Shore refused to provide a breath or blood sample, so Offficer Mancillas obtained a warrant from the magistrate to obtain a blood sample from Shore.

Next, Wharton Police Sergeant Jason Barker testified that he assisted Officer Mancillas with the investigation at the accident scene. Sergeant Barker also testified that, based on his observations, he believed that Shore was intoxicated—she had "glassy, hazy" eyes and he could "clearly smell alcohol on her breath." Shore also admitted to Sergeant Barker that she had had three beers that evening.

The State also presented the testimony of Kendall Oswald, the tow-truck driver. Oswald testified that Shore called him to tow her car after the accident. When he arrived on the scene, he noticed that her car was "in the ditch" and "up against, like, an electric pole, telephone junction box." Oswald wondered why Shore had not called the police and told Shore that he intended to do so. Oswald testified that Shore asked him not to call the police and told him that "[s]he was afraid that she would go to jail" for driving while intoxicated. On cross-examination, Oswald testified that it was his "experience that a lot of people don't really want to get the police involved."

3

Finally, the State called Devin Stashicha, a forensic scientist employed by the Texas Department of Public Safety. Staschica testified that the blood sample drawn from Shore approximately two hours after she was arrested showed a blood alcohol level of .20. Staschica confirmed that the legal limit is .08 and that Shore's result was therefore more than twice the legal limit. Staschica then testified generally about the biology of blood alcohol levels and why some people have higher tolerances. Based on Shore's height and weight, Staschica estimated that Shore had consumed at least 10 drinks that night.

After the close of evidence and argument by counsel, the jury found Shore guilty of the charged offense. Shore pleaded true to both enhancement paragraphs. The trial court then sentenced her to five years' incarceration, but ordered that she be considered for shock probation after she serves 120 to 180 days of her sentence. This appeal followed.

## II. Discussion

By one issue, Shore argues that the trial court erred in admitting the blood test evidence showing she was intoxicated because the warrant to draw her blood was signed by a magistrate who was not a licensed attorney. *See* TEX. CODE CRIM. PROC. ANN. 18.01(j) (West Supp. 2011). Even assuming without deciding that the trial court should have suppressed the blood test results, we conclude that this error was harmless.

The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is Texas Rule of Appellate Procedure 44.2(a)'s constitutional standard. *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Under rule

4

44.2(a), we "must reverse a judgment of conviction or punishment unless [we] determine[] beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Our analysis in this regard should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact of the erroneously admitted evidence on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). This standard requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Id.* at 586.

Even disregarding the blood test results, the evidence of Shore's intoxication was overwhelming. Two police officers testified that Shore showed overt signs of intoxication—bloodshot, glassy eyes; unsteady balance; slurred speech; and the odor of alcohol coming from Shore. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (enumerating nonexclusive list of signs recognized as evidence of intoxication, including slurred speech, bloodshot eyes, odor of alcohol on the person, unsteady balance, and staggered gait); *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim.

5

App. 1979) (reasoning that an officer's testimony that a person was intoxicated provided sufficient evidence to establish element of intoxication). There was also testimony that Shore failed every field sobriety test administered by Officer Mancillas. *See Soutner v. State*, 36 S.W.3d 716, 721–22 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding that evidence of intoxication was sufficient where defendant, among other things, failed field sobriety test). She even admitted to consuming three beers. In addition, Shore's actions on that night demonstrated a consciousness of guilt. She begged Officer Mancillas to just let her go to her apartment down the road, and she asked Oswald, the tow-truck driver, not to call the police because she was afraid she would go to jail for driving while intoxicated. *See Hyde v. State*, 846 S.W.2d 503, 505 (Tex. App.—Corpus Christi 1993, pet. ref'd) (holding that "any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt,' may be received as" circumstantial evidence). Finally, we cannot conclude that the blood-draw evidence was unduly emphasized by the State such that the jury would have given it particularly heavy weight. In its closing argument, the State went to great lengths to point out all the evidence other than blood test results, even expressly stating to the jury that if it completely disregarded Shore's blood alcohol level, it could still convict Shore of the charged offense.

In sum, having reviewed the entire record in a neutral manner, we conclude beyond a reasonable doubt that any error by the trial court in admitting the blood test results did not contribute to the conviction in this case. *See* TEX. R. APP. P. 44.2(a); *Harris*, 790 S.W.2d at 586–87. The trial court's denial of Shore's motion to suppress was

6

harmless in light of the ample other evidence of Shore's guilt. *See Wesbrook*, 29 S.W.3d at 119. Shore's appellate issue is overruled.

### III. Modification of Judgment

The judgment of conviction in this case erroneously states that the punishment was assessed by the jury, whereas our review of the record indicates that the trial court assessed punishment. The Texas Rules of Appellate Procedure allow this Court to modify judgments sua sponte to correct typographical errors and make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, pet. ref'd). Accordingly, we modify the judgment to correctly reflect that punishment was assessed by the court.

### IV. Conclusion

We affirm the judgment as modified.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of August, 2013.

7